IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Marian Betty Deveaux, | ) | C/A No.: 1:09-510-RBH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michael J. Astrue, Commissioner of | ) | |
| Social Security Administration | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This appeal from a denial of social security benefits is before the court for a report

and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff

("Plaintiff" or "Claimant") brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying her claim for Disability Insurance Benefits ("DIB"). The two

issues before the court are whether the Commissioner's findings of fact are supported by

substantial evidence and whether he applied the proper legal standards.

I.      Relevant Background

        A.      Procedural History

        Plaintiff protectively filed an application for DIB on August 18, 2006, under Title

II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–433. *See* Tr. 93–96.  She

alleges she has been disabled since June 15, 2001, because of diabetes, hypertension, and

arthritis in her shoulder and neck. *See* Tr. 93, 97–104. Her application was denied

initially and upon reconsideration. Tr. 51–52.   Plaintiff filed an application for

Supplemental Security Income (SSI) on August 18, 2006. She was awarded SSI benefits and has not appealed that award. *See* Tr. 10. Administrative Law Judge Edward Morriss ("ALJ") held a hearing on July 3, 2008, at which Plaintiff appeared, represented by her attorney Mr. Conrad Falkiewicz. *See* Tr. 17–49 (hr'g transcript). In a decision dated August 12, 2008, the ALJ found that Plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform a full-range of light work, which did not preclude her from performing her past relevant work as a machine operator. *See* Tr. 10–16. The Appeals Council denied Plaintiff's request for review on January 22, 2009 (Tr. 2–4), making the ALJ's decision the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981 (2009).

B.      Plaintiff's Background and Medical History

Plaintiff was born in 1950 and was 58 years old at the time of her hearing before the ALJ. Plaintiff completed high school and has past relevant work as a machine operator. Tr. 20, 93.

1.      Medical Information Concerning Period Plaintiff Was Insured

On September 18, 2002, Plaintiff saw Paul M. Deaton, Jr., M.D., with complaints of headaches. He also noted she had high blood pressure. Tr. 490–91. On September 29, 2002, Plaintiff returned to Dr. Deaton with complaints of headaches, high blood pressure and depression. He prescribed medication for each of these conditions. Tr. 488–89. Dr. Deaton scheduled an MRI of her brain on October 11, 2002, which revealed "severe underlying small vessel disease." Tr. 493–94.

On October 29, 2002, she again saw Dr. Deaton, who indicated her blood pressure remained high, but that her headaches were "much improved." Tr. 486. Plaintiff continued to see Dr. Deaton. At her February 27, 2003 visit, Dr. Deaton noted that her diabetes mellitus was not well controlled and that her blood pressure remained somewhat elevated. Tr. 482. At that same visit, he noted that she complained of being "forgetful and not able to get things done." Tr. 482. As part of his assessment regarding her February 27, 2003 visit, he opined that she was "disabled at her age [with] the degree of illness she had." Tr. 482.

On April 2, 2003, Dr. Deaton noted that Plaintiff's diabetes mellitus was still uncontrolled, noting her fasting blood sugars were above 150, which required insulin, and her blood pressure was still high. Tr. 480. In 2003, Dr. Deaton increased her insulin regimen. Tr. 478. Plaintiff indicated that she felt "ok" since beginning an insulin regimen, and her blood pressure was improved. Tr. 478.

On September 2, 2003, Plaintiff returned to Dr. Deaton complaining of right knee pain that intermittently caused the knee to "give out" on her. Tr. 476. Dr. Deaton again increased Plaintiff's insulin dosage, noted she still had hypertension and that she was obese. Tr. 476–77. At her October 17, 2003 visit, Dr. Deaton adjusted her insulin because her fasting blood sugars were still high. He also noted her blood pressure was "not to goal" and adjusted her medication. Tr. 474. In December 2003, Dr. Deaton noted Plaintiff's blood pressure had been high for three visits in a row. Tr. 472. She told Dr. Deaton she was feeling well and walking three times per week. *Id.*

When she returned to Dr. Deaton in March 2004, he concluded that her blood pressure was "uncontrolled" and that her blood sugar remained high. Tr. 470. In July 2004, Dr. Deaton noted that Plaintiff's high blood pressure was under "excellent control," but her blood glucose level was slightly elevated. Tr. 468. In October 2004, her blood pressure was high, 198/100, which Dr. Deaton's staff recorded might be a result of stress, and her blood tests had shown her blood glucose was not well controlled. Tr. 466. In December 2004, Dr. Deaton noted that her blood pressure was 174/100 at the visit, but that she had not been keeping a record of her readings when away from his office. He noted her diabetes mellitus was still uncontrolled. Tr. 464.

Plaintiff reported in May 2005 that her fasting blood sugar levels were normally 120, which was within normal limits. Tr. 462. In June of 2005, Dr. Deaton noted that Plaintiff complained of intermittent headaches and that her blood pressure readings were between 90 and 170. Tr. 460. In August 2005, Dr. Deaton noted that Plaintiff's blood pressure was still not to goal. Tr. 458. In October and December 2005, Dr. Deaton's notes indicated that Plaintiff's blood sugar levels and blood pressure were not well controlled. Tr. 454, 456.

In March 2006, Dr. Deaton reported Plaintiff's blood pressure was still high. Tr. 452. In April 2006, Plaintiff again saw Dr. Deaton and complained of back pain lasting three-to-four days and again complained of her right knee "giving way." Tr. 450. Her blood pressure remained high. *Id.*

In June 2006, Plaintiff went to the Franklin C. Fetter Family Health Center (Fetter Center) to establish care. Tr. 364. In August, she stated that her diabetes was under better control since she began watching her diet, and her primary complaint was right knee pain. Tr. 359.

In July 2006, Plaintiff went to the Storm Eye Instituted at the Medical University of South Carolina ("MUSC") and was diagnosed with blurred vision. Tr. 390–91. Her visual acuity was noted to be 20/40. Notes from her August 2006 visit to the Storm Eye Institute indicated she would likely need laser surgery and a September 2006 visit indicates vision of 20/50. Tr. 402–03.

On October 3, 2006, Plaintiff saw Doctors Ulozas and Othersen of MUSC for kidney problems. Tr. 387–389. They noted she had a longstanding history of diabetes resulting in diabetic retinopathy and probable diabetic nephropathy. Tr. 389. The October 3, 2006 notes indicate Plaintiff has an "estimated GFR of greater than 60 ml/min and CKD Stage 1 with proteinuria." Tr. 388. An addendum to the October 3, 2006 record indicates Plaintiff had an ultrasound that revealed a mass on her left kidney measuring 5cm x 5 cm. Tr. 389. On October 17, 2006, Plaintiff had an MRI that indicated the following: "1. Left kidney mass with MR characteristics that favor papillary renal cell tumor vs. angiomyolipoma vs. oncocytoma or adenoma[,] 2. Enlarged uterus with pedunculated fibroids[,] 3. Mid course dilatation of the right ureter likely secondary to compression from the enlarged uterus[, and] 4. Engorged left gonadal vein." Tr. 377. On November 14, 2006, Harry S. Clarke, Jr., M.D., Ph.D., examined Plaintiff and arranged a

renal scan to determine whether a partial or complete removal of the left kidney was needed. Tr. 381–82. Dr. Clarke indicated surgery would be scheduled for January 4, 2007. Tr. 382. On November 15, 2006, Plaintiff had a renal scan that also confirmed the renal mass and indicated Plaintiff needed to have her left kidney entirely or partially removed. Tr. 376.

  2.  Medical Records After Plaintiff's Insured Status Ended.

Plaintiff's insured status ended on December 31, 2006. In January 2007, notes from Dr. Clarke's office indicate the surgery to remove part of Plaintiff's left kidney had been put on hold awaiting funds. Tr. 412.

On January 2, 2007, Plaintiff had laser surgery on her right eye at MUSC. Tr. 164–65. On that date, her vision was tested as being 20/30 on the right eye and 20/80 on the left eye before correction. After correction, both eyes had 20/20 vision. Tr. 166. In March 2007, Jeffrey R. Richards, M.D. noted that Plaintiff's vision in both eyes was 20/40. Tr. 504–05. Dr. Richards wrote Plaintiff a prescription for bi-focal lenses. Tr. 502. On March 23, 2007, Dr. Richards opined that Plaintiff had "useful binocular vision with glasses," both at a distance and near. Tr. 499. He restricted Plaintiff from driving at night, and indicated she needed more laser surgery and close monitoring. Tr. 499.

On April 3, 2007, state agency medical consultant Mary Lang, M.D. completed a "Physical Residual Functional Capacity Assessment" form. Tr. 528–35. In that RFC Assessment, Dr. Lang indicated the RFC assessment was for "Current Evaluation" and for "Date Last Insured: 12/31/2006." Tr. 528. Based on her review of the medical

evidence of record, Dr. Lang concluded that Plaintiff retained the RFC to occasionally lift and/or carry up to twenty pounds; frequently lift and/or carry up to ten pounds; stand and/or walk for about six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday.   Tr. 529.   She added that Plaintiff should limit "push/pull foot controls" to "frequent, not continuous." Tr. 530.  The only limit she placed on Plaintiff's postural limitations was a limit climbing ramp/stairs occasionally and climbing ladder/rope/scaffolds never."   Tr. 530.   Dr. Lang further indicated the following environmental limitations: Plaintiff should avoid concentrated exposure to extreme heat, humidity, and "hazards (machinery, heights, etc.)."   Tr. 532.   She based the environmental limits on heat and humidity to Plaintiff's renal disease and the hazard limitation to her cerebrovascular diagnosis and diabetes.  *Id.*

Although not cited to by either party in their briefs, the record also includes a second consultative evaluation by Dr. Lang for which she completed a Physical RFC Assessment dated August 17, 2007.  Tr. 250–57.  In that RFC Assessment, Dr. Lang indicated the RFC was for "Date Last Insured: 12/31/2006" and "Other (Specify): 3/01/07-present."  Tr. 250.  In this Assessment, Dr. Lang found Plaintiff had the RFC to occasionally lift and/or carry up to twenty pounds; frequently lift and/or carry up to ten pounds; stand and/or walk for about six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday.  Tr. 251. She did not include any limitation on Plaintiff's use of "push/pull foot controls." Tr. 250–51, *compare with* Tr. 530.  The only limit she placed on Plaintiff's postural limitations was a limit climbing ramp/stairs

occasionally and climbing ladder/rope/scaffolds never." Tr. 252. She limited Plaintiff's overhead reaching to occasional. Tr. 253. Dr. Lang further indicated the following environmental limitations: Plaintiff should avoid concentrated exposure to extreme heat and humidity. Tr. 254. She indicated no limits on "hazards (machinery, heights, etc.)." Tr. 254, *compare with* Tr. 532. She based the environmental limits on heat and humidity to Plaintiff's renal disease. Tr. 254. In explaining her findings regarding Plaintiff's RFC, Dr. Lang indicates as follows, in pertinent part:

> combination of impairments: uncontrolled HTN [hypertension] w/addition of 4th antihypertensive due to bp 185/98, worsening renal function-now with Stage III CKD w/gfr from 59-35, evidence of cervical and shoulder disease with abn xrays, dec ROM in clmt w/allegations of neck and shoulder pain, reasonable to expect clmt no better than light w/o/h restrictions. Most favorable onset is 3 mths prior to CE–3/01/07.

Tr. 251–52. She includes further summary of the medical evidence on the last page of her RFC Assessment. *See* Tr. 257.

On June 30, 2007, Ogo Oladimeji, M.D. performed a "Comprehensive Orthopedic Examination" on Plaintiff. See Tr. 235–39. He notes he had "no record from the patient's primary care physician or previous treating physician" when preparing his evaluation. Tr. 235. He concludes with the following assessments: Bilateral shoulder pain possibly due to osteoarthritis; neck pain possibly due to either whiplash injury/osteoarthritis; type 2 diabetes; hypertension; hypercholesterolemia; diabetic retinopathy, status post laser surgery; visual impairment. Tr. 239.

C.    The Hearing Before the ALJ

1.    Plaintiff's Testimony

Plaintiff testified that she had undergone five or six surgeries on her eyes because of retinopathy, but that she still sees "floaters." Tr. 22–23, Tr. 34–35. She additionally said that she had problems with her knees, which would "give in" and cause her to fall, and she claimed that she had never undergone any x-rays or other diagnostic tests. Tr. 24–25. She stated that Dr. Deaton had instructed her to use a cane to ambulate. Tr. 24. Plaintiff also testified that she suffered from thinking and memory problems as a result of small vessel disease in her brain. Tr. 26. She said that she stopped seeking medical treatment after she quit working because she had no medical insurance and lacked the money to pay for treatment herself. Tr. 27. Plaintiff testified that she had mass on her kidney which required surgery, but it had been postponed because of her lack of insurance. Tr. 29. She testified that she would be seeing the doctor at the end of July 2008 and expected to discuss the surgery at that time. Tr. 36, 39–40. Plaintiff testified that she had been found disabled for purposes of receiving SSI as of March 2007, but that she was not sure why they found her disabled on that particular date. Tr. 34. She did note she had multiple eye surgeries around that time. Tr. 34–35. She testified that she did not drive. Tr. 27. She said that, starting in 2006, she had pain, nausea, and sleeplessness because of her kidney problem. Tr. 40, 44–45. She testified that she lived alone, sat or slept in her chair, and watched TV or read a little of the Bible. Tr. 46–47. She indicated she did not

cook much and her daughter took care of shopping, laundry, and meals both in 2006 and at the time of the hearing (2008). Tr. 46.

### 2. ALJ's Decision

The ALJ followed the five-step sequential evaluation process to determine that Plaintiff was not disabled. The ALJ found that Plaintiff had not engaged in substantial gainful activity since June 15, 2001, her alleged onset date of disability. Tr. 14. He further found that Plaintiff had the "severe" impairments of diabetes with retinopathy and nephropathy, but that her impairments did not meet or equal the criteria of an impairment listed in the applicable regulations. Tr. 12–13. At the fourth step of the sequential evaluation, the ALJ found that Plaintiff retained the RFC to perform a full range of work at the light level of exertion. Tr. 13. Because this RFC did not preclude Plaintiff from performing the requirements of her past relevant work as a machine operator, the ALJ determined that Plaintiff was not disabled, as defined by the Social Security Act. Tr. 16.

## II. Discussion

In her brief before the court, Plaintiff argues that the Commissioner's findings are in error because the ALJ's decision:

1. Was not based on substantial evidence because it failed to expressly consider and reconcile medical records that directly proved the claimant was disabled;

2. Failed to include proper listing and/or combined effect analyses of Plaintiff's impairments;

3. Violated 20 C.F.R. § 404.1527(d) in evaluating the opinion evidence; and

4.      Did not base Plaintiff's RFC finding on the requisite function-by-function assessment.

A.      ALJ Findings

In his decision, the ALJ made the following findings of fact and conclusions of law:

1.      The claimant last met the insured status requirements of the Social Security Act through December 31, 2006.

2.      The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 15, 2001, through her date of last insured of December 31, 2006 (20 CFR 404.1520(b), 404.1571 *et seq.*).

3.      Through the date last insured, the claimant had the following severe combination of impairments: diabetes with retinopathy and nephropathy (20 CFR 404.1520(c)).

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5.      After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b).

6.      Through the date last insured, the claimant's past relevant work as a machine operator did not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 CFR 404.1565).

7.      The claimant was not under a disability as defined in the Social Security Act, at any time from June 15, 2001, the alleged onset date, through December 31, 2006, the date last insured (20 CFR 404.1520(f)).

Tr. 12–16.

B.      Legal Framework

1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines "disability" as follows:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of "disability" to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1; (4) whether such impairment prevents claimant from performing past relevant work; and (5) whether the impairment prevents her from doing substantial gainful employment.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred to

as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant "disabled or not disabled at a step," Commissioner makes determination and "do[es] not go on to the next step.").

A claimant is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling (SSR) 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Id.* If the Commissioner satisfies its burden, the claimant must then establish that she is unable to perform other work. *Id.; see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

2.  The Court's Standard of Review

The Social Security Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); s*ee Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek v. Finch*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be

affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483

F.2d 773, 775 (4th Cir. 1972).

    C.    Analysis

        1.    The ALJ's Finding Plaintiff Was Not Disabled as of December 31, 2006 Should Be Remanded for Further Consideration.

Plaintiff first argues that the ALJ's decision is not supported by substantial evidence. Pl.'s Br. 5–7. She claims the ALJ did not appropriately consider all evidence and did not sufficiently explain his finding in light of all the evidence. *Id.* Her principal argument focuses on issues Plaintiff had with her kidneys, as reflected in 2006 and 2007 MUSC records. *See* Pl.'s Br. 5–7 and Pl.'s Reply Br. 1. Plaintiff's October 2006 MRI revealed the following: "1. Left kidney mass with MR characteristics that favor papillary renal cell tumor vs. angiomyolipoma vs. oncocytoma or adenoma[,] 2. Enlarged uterus with pedunculated fibroids[,] 3. Mid course dilatation of the right ureter likely secondary to compression from the enlarged uterus[, and] 4. Engorged left gonadal vein." Tr. 377. *See* also Tr. 387–89. These records also indicate that Plaintiff required surgery for removal of the mass. Tr. 381, 389. However, the surgery was postponed because Plaintiff was "awaiting funding." *See* Tr. 412.

Plaintiff argues that her "longstanding history of diabetes mellitus and hypertension were major contributing factors in the development of" the kidney mass, and that "any of these conditions, or all of them combined, could certainly cause the severely debilitating symptoms [Plaintiff] testified to having suffered." Pl.'s Br. 7. She

also notes her testimony at the hearing before the ALJ in which she testified that she went

to the doctor for her kidney because she was having so much pain. *See* Tr. 40. Plaintiff

testified that in October 2006, when diagnosed with the kidney-mass, she would not have

been able to return to her past work as a machine operator because she "was having so

much pain standing." Tr. 43. Plaintiff argues that it "does not take a rocket scientist to

understand that kidney disease can certainly cause the symptoms to which [she] testified."

Pl.'s Br. 7. She claims the ALJ improperly found her not to be disabled, and, "based on

nothing, that there was no indication of significant limitations related to this condition."

Pl.'s Br. 7 (*citing* Tr. 15).

The Commissioner counters that the ALJ's finding is supported by substantial

record evidence, that it is Plaintiff's burden of establishing her disability, and that her

argument is based purely on supposition. Def.'s Br. 7–9. Specifically, the Commissioner

argues that Plaintiff has not pointed to any record evidence indicating she had significant

functional limitations during her period of insurance. He further points out that Plaintiff

claims her disability onset date was January 2001 and that she has offered no evidence at

all that her kidney mass or problems were present at that time. Def.'s Br. 9.

The ALJ acknowledges that Plaintiff's kidney problem, or nephropathy, was

documented as severe in August 2006. Tr. 15. He points out, though, that the record

contains no indication that Plaintiff suffered significant limitations because of the

condition and specifically focuses on a note from Plaintiff's visit to the Franklin Fetter

Clinic in November 2006 indicating that her kidneys were "working fine." *Id.* (*citing* ex.

F 277 (Tr. 486)). He also references a January 2007 notation that, although Plaintiff needs surgery to have the mass removed from her kidney, the surgery would have to wait until Plaintiff had funding. Tr. 15. He indicates this postponement for funding (*see* Tr. 410) "suggests that the claimant's need for surgery was not as urgent[.]" Tr. 15.

The ALJ also notes the record does not indicate Plaintiff required hospitalization or emergency treatment for her diabetes or related issues (including kidney and eye issues), or that she needed dialysis or additional treatment for pain. Tr. 15. He finds the conservative treatment of her conditions to be inconsistent with impairments severe enough to preclude work. *Id.*

After a detailed independent review of the ALJ's decision, the record, and the parties' briefs, the undersigned cannot find that the ALJ's finding are supported by substantial evidence. The court does not concur with Plaintiff's argument, in which she suggests the court award benefits on the current record because Plaintiff was diagnosed with a mass in her kidney in 2006, while still insured for a few more months, and was then found disabled for receipt of SSI benefits as of March 1, 2007.[1] It does not

_____

[1]In *Hall v. Astrue*, 9:08-3440-JFA, 2010 WL 412607, at n.2 (D.S.C. Jan. 27, 2010), the court explained the interrelation of DIB and SSI benefits as follows:

Although the definition of disability is the same under both DIB and SSI; *Emberlin v. Astrue*, No.06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb.29, 2008); "[a]n applicant who cannot establish that [he] was disabled during the insured period for DIB may still receive SSI benefits if [he] can establish that [he] is disabled and has limited means." *Sienkiewicz v.Barnhart*, No. 04-1542, 2005 WL 83841(7th Cir. Jan.6, 2005). *See also Splude v. Apfel*, 165 F.3d 85, 87 (1st Cir.1999) (Discussing the difference between DIB and SSI benefits). Under SSI, the claimant's entitlement to benefits (assuming they establish disability) begins the month following the date of filing the application

automatically follow that she should now be found disabled and eligible for benefits from 2001 forward. Plaintiff must provide evidence that links her health issues to her nephropathy and or other impairments and sets out what limitations her impairments placed on her ability to work during her insured period. *See, e.g., Johnson v. Barnhart*, 434 F.3d 650, 655–56 (4th Cir. 2005) (holding that to qualify for DIB, a claimant "must prove that she became disabled prior to the expiration of her insured status.")

That stated, however, on the current record, the court cannot find that the ALJ's findings are supported by substantial record evidence or that he makes his rationale for making his finding of non-disability as of December 31, 2006 clear enough for proper review by the court. The undersigned recommends remand for the ALJ's additional consideration of record evidence and, if required, for additional evidence.

The Social Security Administration ("SSA") informed Plaintiff that her claim for DIB had been denied. *See* Tr. 87. By letter dated August 24, 2007, the Commissioner informed Plaintiff that it had determined, for SSI purposes, that she was disabled as of March 1, 2007. Tr. 85–86 (noting determination of disability portion of SSI application determined Plaintiff disabled as of March 1, 2007). The SSI determination was not appealed and is the final decision of the Commissioner as to her SSI benefits. *See* Tr. 10 (ALJ's noting Plaintiff awarded SSI and that eligibility not at issue).

---

forward. *Pariseau v. Astrue*, No. 07-268, 2008 WL 2414851, * 13 (D.R.I. June 13, 2008).

Both of "Explanation of Determination" letters SSA sent Plaintiff included virtually identical lists of evidence the SSA used in making the decisions. *Compare* Tr. 86 *with* 87. Records reviewed included evidence from Dr. Deaton (received by SSA 09/18/06); Charlestowne Internal Medicine (received 03/06/07); MUSC - Medical Records (received 02/27/07); Franklin C. Fetter Family Health (received 02/28/07); and Bon Secours St. Francis Zavier (received 02/14/07). Tr. 86–87. In addition, these explanations of determination each indicated that the following three consultative exams had also been considered: Dr. Ojo M. Oladimeji, MD Internal Medicine, Consultative Exam 06/30/07; Tri County Radiology Assocs PA Radiology, Consultative Exam 08/08/07; and Dr. Jeffrey K Richards MD Ophtalmology, Consultative Exam 03/15/07. *Id.*

The SSA's findings as to her eligibility for SSA as of March 1, 2007 are not before the court. It seems, though, that the SSA determined Plaintiff's eligibility for both DIB and SSI benefits by review of the same, or many of the same, medical records. The court's review of the record evidence in considering whether the ALJ's denial of DIB is supported by substantial evidence has necessarily included review of evidence from Plaintiff's alleged onset date through 2007.

The court's review of the records and the ALJ's finding begs the question of what changed in March 2007 that made Plaintiff then-disabled. Additionally, it raises questions as to timing and whether evidence dated after the end of Plaintiff's insured

period appropriately provided support for the ALJ's finding Plaintiff not to be disabled as of December 31, 2006.

In its review, the court is mindful that its role is not to dissect the findings of the SSA and its examiners itself but to consider the ALJ's decision and whether it is based on substantial evidence. *See Vitek v. Finch*, 428 F.2d at 1157–58 (noting the court must carefully scrutinize the entire record to determine whether there is a sound foundation for the Commissioner's findings, and that his conclusion is rational); *see also Thomas v. Celebrezze*, 331 F.2d at 543. The undersigned cannot make such a determination here.

The ALJ has not provided full discussion of or specific reference to the medical opinions on which he relied. *See* Tr. 15–16. In his decision, the ALJ indicates as follows:

> As for the opinion evidence, pursuant to 20 CFR §404.1527 and Social Security Rulings 06-3p, 96-6p and 96-2p, I have considered the medical opinions, which are statements from acceptable medical sources which reflect judgments about the nature and severity of the impairments and resulting limitations, of the claimant's treating physicians, evaluating physicians, and the state agency medical consultants.

> I accord less than controlling weight to Dr. Deaton's conclusion from February 2003 that the claimant was disabled as there was no basis was stated for this opinion and the records as of this date fail to reveal any disabling conditions (Exhibit F 323).

> Regarding the medical opinions of the DDS medical consultants, I accord them significant weight as their opinions are generally consistent with the other evidence of record.

Tr. 15–16.

As discussed below, the court does not disagree with the ALJ's determination that Dr. Deaton's opinion is entitled to less than controlling weight. However, providing only boilerplate language regarding review of opinions from "the claimant's treating physicians, evaluating physicians, and the state agency medical consultants[]" does not indicate which of these medical professionals' opinions the ALJ considered and afforded controlling weight. Merely indicating that he gave great weight to "the medical opinions of the DDS medical consultants," (Tr. 16), is too vague for the court to properly review.

In the court's effort to perform its review, it located several reports from "medical consultants," some of which contain conflicting assessments. For example, the record contains at least two reports from state agency medical consultant Dr. Mary Lang that contain slightly different findings, including different limitations on Plaintiff's RFC for work. *Compare* Tr. 528–35 (Dr. Lang's April 3, 2007 assessment) *with* Tr. 250–57 (Dr. Lang's August 17, 2007 assessment).

On April 3, 2007, Dr. Lang completed an RFC Assessment, which indicated it was for "Current Evaluation" and for "Date Last Insured: 12/31/2006." Tr. 528. Based on her review of the medical evidence of record, Dr. Lang concluded that Plaintiff retained the RFC to occasionally lift and/or carry up to twenty pounds; frequently lift and/or carry up to ten pounds; stand and/or walk for about six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday. Tr. 529. She added that Plaintiff should limit "push/pull foot controls" to "frequent, not continuous." Tr. 530. The only limit she placed on Plaintiff's postural limitations was a limit climbing ramp/stairs occasionally

and climbing ladder/rope/scaffolds never." Tr. 530. Dr. Lang further indicated the following environmental limitations: Plaintiff should avoid concentrated exposure to extreme heat, humidity, and "hazards (machinery, heights, etc.)." Tr. 532. She based the environmental limits on heat and humidity to Plaintiff's renal disease and the hazard limitation to her cerebrovascular diagnosis and diabetes. *Id.*

The record also includes a second consultative evaluation by Dr. Lang for which she completed a Physical RFC Assessment dated August 17, 2007. Tr. 250–57. In that RFC Assessment, Dr. Lang indicated the RFC was for "Date Last Insured: 12/31/2006" and "Other (Specify): 3/01/07-present." Tr. 250. In this Assessment, Dr. Lang found Plaintiff had the RFC to occasionally lift and/or carry up to twenty pounds; frequently lift and/or carry up to ten pounds; stand and/or walk for about six hours in an eight-hour workday; and sit for about six hours in an eight-hour workday. Tr. 251. She did not include any limitation on Plaintiff's use of "push/pull foot controls." Tr. 250–51, *compare with* Tr. 530. The only limit she placed on Plaintiff's postural limitations was a limit climbing ramp/stairs occasionally and climbing ladder/rope/scaffolds never." Tr. 252. She limited Plaintiff's overhead reaching to occasional. Tr. 253. Dr. Lang further indicated the following environmental limitations: Plaintiff should avoid concentrated exposure to extreme heat and humidity. Tr. 254. She indicated no limits on "hazards (machinery, heights, etc.)." Tr. 254, *compare with* Tr. 532. She based the environmental limits on heat and humidity to Plaintiff's renal disease. Tr. 254. In explaining her findings regarding Plaintiff's RFC, Dr. Lang indicates as follows, in pertinent part:

combination of impairments: uncontrolled HTN [hypertension] w/addition of 4th antihypertensive due to bp 185/98, worsening renal function-now with Stage III CKD w/gfr from 59-35, evidence of cervical and shoulder disease with abn xrays, dec ROM in clmt w/allegations of neck and shoulder pain, reasonable to expect clmt no better than light w/o/h restrictions. Most favorable onset is 3 mths prior to CE–3/01/07.

Tr. 251–52. She includes further summary of the medical evidence on the last page of her RFC Assessment. *See* Tr. 257. This abbreviated assessment, which indicates Plaintiff's combined impairments, including her "worsening renal function" and "additional hypertensive," finds Plaintiff's "most favorable onset" would be three months prior to her completing her Consultative Examination, that is, March 1, 2007. Tr. 251. This opinion offers the only evidence the court has located that could identify how March 1, 2007 became the onset date for Plaintiff's SSI disability determination. Again, that is not the true issue. However, this highlights the need for the ALJ's clarification and additional consideration of the record.

The undersigned recommends remand so that the ALJ may more fully consider the opinions and assessments of record and explain his acceptance or rejection of them. Further, the court notes the absence of discussion of what limitations Plaintiff's Chronic Kidney Disease ("CKD") caused her in the records from the MUSC specialists who were treating her for CKD and were to perform surgery to remove part or all of her left kidney. Here, it seems that medical consultants, such as Dr. Lang, based their determination of when Plaintiff became disabled (March 1, 2007) at least in part on the worsening of Plaintiff's kidney disease. *See* Tr. 251. It may be appropriate for the ALJ to seek

clarification from those specialists regarding what limitations Plaintiff had and when she

had them. *See* 20 C.F.R. § 404.1512(e)(1) (noting it appropriate to "seek additional

evidence or clarification" from medical source if a report contains a "conflict or

ambiguity that must be resolved" or "does not contain all the necessary information");

*see, e.g., Bonds v. Astrue*, C/A No. 6:07-1135-JFA, 2008 WL 2952446 (D.S.C. July 29,

2008) (ordering ALJ to reevaluate medical opinions and seek clarification if needed).

In addition, remand is appropriate because some of the evidence on which the ALJ

may have relied was actually from after Plaintiff's last insured date. For example, one of

the consultative examinations on which the SSA indicated it relied in finding Plaintiff not

disabled as of December 31, 2006, but finding her disabled as of March 1, 2010 is an

examination by Dr. Ogo Oladimeji. *See* Tr. 86–87 (SSA Explanations of Determination),

Tr. 235–41 (Dr. Oladimeji's report). Notably, he indicated that "no record from the

patient's primary care physician or previous treating physician was available for this

evaluation." Tr. 235. Although the determinations list Dr. Oladimeji as an internist (*see*

Tr. 86–87), he performed a comprehensive orthopedic examination of Plaintiff. Tr.

235–41. He examined Plaintiff on June 30, 2007—six months after her insured status had

expired. The court does not understand how an examination performed after the insured

period, performed by a doctor who had never seen Plaintiff before, and had none of her

prior medical records, could be used to determine her disability or nondisability as of

December 31, 2006. It is not the court's place to determine such issues. It is the court's

place, though, to decide whether the ALJ considered this decision and what weight, if

any, he gave it. The ALJ's decision does not provide this information and, on remand, the ALJ should provide these answers.

The ALJ's decision indicates he may have taken into account the issue of timing and which records were appropriate to consider when he indicated that Plaintiff's medical records following her insured period are "marginally relevant to the claimant's claim for disability as they are chronologically distant from the claimant's date last insured." Tr. 15. At the hearing, the ALJ questioned claimant at some length about her health in 2007 and about the 2007 exam by Dr. Oladimeji. *See* Tr. 34–40. He also referenced her Stage III CKD as of July 2007. Tr. 40. However, he does not reference these in his decision, so it is unclear what weight, if any, he gave such evidence.

On remand, the ALJ should also preform additional review regarding Plaintiff's claimed retinopathy. In his decision, the ALJ noted that the record included information regarding treatment from the Storm Eye Institute from July and August 2006. He noted that the July 2006 report indicated a complaint of blurred vision, but found visual acuity of 20/40 and normal visual field testing. Tr. 15. He indicated an August 2006 treatment note that indicated Plaintiff would likely need laser treatment on her eyes. He ended the discussion of Plaintiff's retinopathy by stating, "[w]hile [Plaintiff] alleged that she has required multiple surgeries, these are not clearly documented in the record." Tr. 15.

The court's own review of the record, though, reveals evidence of laser surgeries by the Storm Eye Institute, including a record from September 19, 2006, which indicated Plaintiff had laser surgery with "0 complications." Tr. 400. Further, as Plaintiff testified

at the hearing, she had several additional laser surgeries in early 2007. Records regarding some of those surgeries are also available in the joint appendix. *See*, *e.g.*, Tr. 164–72 (record of Jan. 2, 2007 laser surgery).

The court is not satisfied that the ALJ appropriately considered all record evidence. This matter should be remanded so that the ALJ may further consider all record evidence, obtain additional evidence as appropriate, and fully explain what evidence he considers in reaching his conclusions regarding whether Plaintiff was disabled during her insured period and, if so when such disability began.

> 2. The ALJ Properly Determined That Plaintiff's Impairments Did Not Meet or Equal a Listed Impairment But Did Not Adequately Consider All of Plaintiff's Impairments in Combination.

>> a. Plaintiff Did Not Establish She Met Any Listing.

The court also considers Plaintiff's remaining arguments to determine whether other areas of inquiry are appropriate on remand. Plaintiff's second argument is that the ALJ erred in failing to find her impairments met or medically equaled a Listed Impairment, in violation of SSR 86-8. SSR 86-8 provides:

> When individual's impairment or combination of impairments meets or equals the level of severity described in the Listing, and also meets the duration requirement, disability will be found on the basis of the medical facts alone in the absence of evidence to the contrary (e.g., the actual performance of SGA, or failure to follow prescribed treatment without a justifiable reason)."

Plaintiff argues that the ALJ erred by a) not finding that she satisfied the requirements of Listing 9.08 for Diabetes Mellitus; b) not finding Plaintiff satisfied Listing 6.06 for

Nephrotic syndrome; and d) not considering all impairments in combination. *See* Pl.'s Br. 8–11.

The Commissioner disagrees, claiming there is no evidence that Plaintiff satisfied the requirements of either listing. Def.'s Br. 10-12. Further, he claims the ALJ appropriately considered all of Plaintiff's claimed impairments in combination. *Id.* The undersigned agrees with the Commissioner that Plaintiff has not established she has satisfied the medical requirements of either Listing 9.08 or 6.06. However, the court agrees with Plaintiff that the ALJ did not undertake an appropriate analysis considering each of Plaintiff's severe and nonsevere impairments in combination in finding her not to be disabled and recommends remand on this point.

The Listings describe impairments that are considered severe enough to prevent a person from engaging in any gainful activity, i.e., impairments which are presumptively disabling. *See* 20 C.F.R. § 404.1525(a). "For a claimant to show that his impairment matches a [L]isting, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 525, 530 (1990).

The ALJ expressly considered whether Plaintiff met the requirements of Listing 9.08 (Diabetes Mellitus), and found that she did not. Tr. 13. Listing 9.08 requires that a claimant establish one of the following:

> A. Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C); or

B. Acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests (pH or PCO2 or bicarbonate levels); or

C. Retinitis proliferans; evaluate the visual impairment under the criteria in [Listing] 2.02, 2.03, or 2.04.

20 C.F.R. pt. 404, subt. P, app. 1, § 9.08.  The ALJ noted that Listing 9.08 requires a claimant to have diabetes mellitus as "characterized by neuropathy, acidosis, or retinitis proliferans."  Tr. 13.  He notes that Plaintiff had retinopathy, but he finds her corrected vision in her better eye did not meet the Listing.  *Id.*

Plaintiff argues that the ALJ "insinuates" that a claimant must meet sections A, B, and C of this Listing.  Pl's Br. at 9.  The court disagrees.  The ALJ plainly indicated these three were conjunctive.  *See* Tr. 13.  Although Plaintiff suggests in a footnote that she satisfies the requirements of Listing 9.08(A), neuropathy, she does not seriously pursue that argument.  *See* Pl.'s Br. 10–11, n.3 (noting not including discussion of it, but Plaintiff's diabetic neuropathy met the requirements of Listing 9.08(A)).  The court disagrees with Plaintiff.  Plaintiff has pointed to no record evidence establishing she satisfied section (A).  She has not met her burden of proof on this point.  Plaintiff does not seem to argue she satisfies section (B).

Plaintiff's argument focuses on Section (C) of the Listing, which requires the following:

2.02 Loss of visual acuity. Remaining vision in the better eye after best correction is 20/200 or less.

2.03 Contraction of the visual field in the better eye, with:

A. The widest diameter subtending an angle around the point of fixation no greater than 20 degrees; or
B. A mean deviation of -22 or worse, determined by automated static threshold perimetry [ ]; or
C. A visual field efficiency of 20 percent or less as determined by kinetic perimetry [ ].

2.04 Loss of visual efficiency. Visual efficiency of the better eye of 20 percent or less
after best correction [ ].

20 C.F.R. pt. 404, subt. P, app. 1, §§ 2.02, 2.03, 2.04.

Plaintiff does little more than set out the requirements of Listing 9.08 and the detailed requirements for satisfying section 9.08(C), however. She does not specifically point to and discuss evidence that she claims demonstrate she satisfies this Listing. Rather, she vaguely cites to eleven pages—Tr. 162–72—as dating back to September 2006 and "indicat[ing]" that her "severe diabetic retinopathy met the requirements of this listing in and of itself." Pl.'s Br. 10.

Again, Plaintiff has not met her burden of establishing she satisfied requirements of Listing 9.08 during her insured period. First, although the record contains several notes regarding Plaintiff's eye treatment during the insured period (*see* Tr. 390–91, 403), Plaintiff does not cite to them at all. Further, review of the cited records and those of which the court is aware from 2006 simply do not indicate Plaintiff satisfies the requirements of Listing 9.08(C). *See, e.g.*, Tr. 390–91 (July 2006 visit indicating visual acuity of 20/40; 403 (September 2006 visit indicating vision of 20/50)).

All records to which Plaintiff cites (Tr. 162–72) are from 2007. Further, they do not indicate vision that satisfies Listing 9.08(C). In January 2007, her vision was assessed as 20/30 on the right and 20/80 on the left, and with correction her vision was 20/20 in both eyes. Tr. 166. In addition, records indicate that in March 2007, Plaintiff's vision was assessed as 20/40 and she was provided with a prescription for correction. Tr. 502. That same month, Dr. Richards concluded that Plaintiff had useful binocular vision with glasses, both at a distance and close up, and his only restriction upon Plaintiff was to not drive at night. Tr. 499. These objective findings simply do not support her claims that her visual impairment in any way met the requirements of Listing 9.08. *See Zebley*, 493 U.S. at 525. On this point, the ALJ did not err.

Plaintiff also argues that the ALJ erred by not finding she satisfied the requirements of Listing § 6.06. *See* Pls.' Br. 10. Again, Plaintiff does little more than recite the requirements of the Listing and a portion of the record with no real discussion. Listing 6.06 for Nephrotic syndrome requires a showing of the following:

> Nephrotic syndrome, with anasarca, persisting for at least 3 months despite prescribed therapy With:
> A. Serum albumin of 3.0 g per dL (100 ml) or less and proteinuria of 3.5 g or greater per 24 hours OR
> B. Proteinuria of 10.0 g or greater per 24 hours.

Listing 6.06.

Plaintiff has not met her burden of showing medical evidence to support her argument. The ALJ did not err in not finding Plaintiff satisfied Listed Impairment § 9.08 or § 6.06.

>    b.    The ALJ Did Not Properly Consider Plaintiff's Combined
>          Impairments.

Plaintiff also argues that the ALJ erred because he did not adequately consider and discuss all of Plaintiff's severe and nonsevere impairments in combination. Pl.'s Br. 8–11. Plaintiff's discussion on this point is scant, but rhetorically asks how she could not equal one of the Listings when she already meets both of them and has other impairments. *Id.*

Nonetheless, the court agrees with Plaintiff that the ALJ did not undertake sufficient analysis of all of Plaintiff's impairments in combination. In *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989), the Fourth Circuit found that when, as here, a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of these impairments in determining the claimant's disability status. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Lemacks v. Astrue*, 9:07-2438-RBH, 2008 WL 2510087 (D.S.C. May 29, 2008), *aff'd*, 2008 WL 2510040 (D.S.C. June 18, 2008). Even if the claimant's impairment or impairments in and of themselves are not "listed impairments" that are considered disabling per se, the Commissioner must also "consider the *combined effect* of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B) (2004) (emphasis added). The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50.

"As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.*

In response, the Commissioner points to the ALJ's Finding 4 which found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments ...." Def.'s Br. 12 (citing Tr. 13). This rote finding is insufficient pursuant to *Walker* and its progeny. *See Walker*, 889 F.2d at 50 (such a "finding in itself, however, is not sufficient to foreclose disability.")

The court cannot agree with the Commissioner's argument either that the signature of a state agency medical consultant on a form suffices to indicate a claimant's impairments do not combine to medically equal a listing. *See* Def.'s Br. 12 (citing SSR 96-6p). The ALJ's duty to consider the combined effect of Plaintiff's multiple impairments is not limited to one particular aspect of its review, but is to continue "throughout the disability process." 20 C.F.R. § 404.1523. Here, the ALJ failed to consider articulate whether and how he considered Plaintiff's multiple impairments together, thereby violating 20 C.F.R. § 404.1523, which provides as follows:

> **Multiple Impairments**. In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

*Id.  See also Fleming v. Barnhart*, 284 F. Supp. 2d 256, 270 (D. Md. 2003) ("The ALJ is required to assess the combined effect of a claimant's impairments throughout the five-step analytical process.")

The ALJ's fragmented examination of Plaintiff's impairments in this matter is insufficient to satisfy 20 C.F.R. § 404.1523. The ALJ found that Plaintiff suffered from the following "severe combination of impairments: diabetes with retinopathy and nephropathy[.]"  Tr. 12.  He also found that Plaintiff was assessed with "hypertension, anemia, headaches, knee problems, and small-vessel disease" during the relevant period, but he found these to be nonsevere impairments.  Tr. 12–13.  Several pages later, the ALJ discusses Plaintiff's two severe impairments—retinopathy and nephropathy—and their impact on Plaintiff's ability to work.  Tr. 15.  He also referenced her small vessel disease. *Id.*  Nowhere, though, does the ALJ discuss how and whether he considered the combined cumulative effect of these impairments and whether, together, the limitations rendered her disabled.  *See Walker*, 889 F.2d at 50 (holding ALJ must "adequately explain his or her evaluation of the combined effect of the impairments.") The ALJ also should have included adequate explanation of his consideration of the severe and non-severe complaints and impairments in his decision.  *Walker*, 889 F.2d at 50.

The undersigned recommends that, on remand, the ALJ consider each of Plaintiff's impairments and the combined effect of all of Plaintiff's impairments, severe and non-severe.  In the decision on remand, the ALJ should explain his evaluation of the combined

effect of Plaintiff's multiple impairments in accordance with 20 C.F.R. § 404.1523 and related precedent.

        3.      The ALJ Did Not Violate 20 C.F.R. § 404.1527(d) in Evaluating the Opinion of Plaintiff's Treating Physician.

Next, Plaintiff argues the ALJ violated SSR 96-2p by not adopting the opinion of Plaintiff's treating physician, Dr. Deaton. SSR 96-2p provides that if a treating source's medical opinion is well-supported and not inconsistent with the record as a whole, then the ALJ should adopt his opinion or provide a sufficient reason he does not. The Commissioner disagrees, arguing the ALJ appropriately considered Dr. Deaton's opinion.

In his notes of a February 2003 office visit with Plaintiff, Dr. Deaton, who undisputedly was one of her treating physicians, opined as follows: "I feel [Plaintiff] is disabled at her age [and with] degree of illness she has." Tr. 482. The ALJ considered Dr. Deaton's opinion, but gave "less than controlling weight" to his February 2003 conclusion. Tr. 15. He explained that his opinion did not include discussion of any basis for it and that the records to that date had not revealed any disabling conditions." Tr. 15.

The court agrees with the Commissioner that the ALJ properly considered this opinion. Significantly, Dr. Deaton had examined Plaintiff on only a handful of occasions prior to issuing this opinion, and each time he treated her hypertension and elevated blood sugar levels with only conservative measures. Tr. 482, 486, 488, 490. *See Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence); 20 C.F.R. §

404.1527(d)(2) (noting that a treating physician's opinion will be given controlling weight only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence of record).

The ALJ did not err by discounting Dr. Deaton's February 2003 opinion. However, as set out above, on remand the ALJ should consider the other opinions of record and explain his rationale for accepting or rejecting them in reaching his decision as to whether and for how long Plaintiff was disabled.

        4.     The ALJ's RFC Finding Did Not Include the Requisite Function-by-Function Assessment.

Plaintiff's final argument is that the ALJ erred by not following the requirements of SSR 96-8p in explaining the limitations he placed on Plaintiff's ability to work. SSR 96-8p requires that an RFC assessment is to include a function-by-function analysis of all of the evidence relevant to an individual's ability to perform work-related activities. Specifically, the Ruling requires the following seven strength demands be separately considered: sitting, standing, walking, lifting, carrying, pushing, and pulling. In assessing an individual's RFC, the ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, and must resolve any inconsistencies in the evidence. *Id.*

The ALJ found that Plaintiff had the capacity for the full range of light work and would be able to return to her past relevant work ("PRW") as a machine operator. Tr. 13, 16. The Commissioner does not dispute that the ALJ did not conduct the function-by-

function analysis that SSR 96-8p requires. Rather, he argues the failure was harmless error and that the ALJ "implicitly" determined that Plaintiff had functional limitations beyond those contained in the definition of light work. Def.'s Br. 13–14 & n.11.

The court agrees with Plaintiff that the ALJ did not perform the required analysis. *See Vo v. Astrue*, 518 F. Supp. 2d 715, 731 (D.S.C. 2007) (remanding to ALJ with instruction to perform the required function-by-function discussion). In *Vo*, the court noted remand was appropriate particularly because the matter was already being remanded for other reasons. *Id.* Here, too, the court recommends remand for other reasons. As such, on remand, the ALJ should elaborate on his RFC as required by SSR 96-8p. Additional analysis will aid the court in determining whether the ALJ's decision is supported by substantial evidence. *See Lowe v. Astrue*, C/A No. 3:07-1766-RBH, 2008 WL 4449940 (D.S.C. Sept. 26, 2008) (remanding for consideration of RFC in accordance with SSR 96-8p).

The court notes, too, that Plaintiff testified that, when performing her PRW as a "queeler," which involves operating a machine that processes fiberglass, she had to remove "heavy" spools from the machine. Tr. 32–33. When asked by the ALJ how heavy the spools were, she indicated they were twenty-to-twenty-five pounds. Tr. 33. The ALJ found Plaintiff could perform the full range of light work, which involves lifting no more than twenty pounds at a time occasionally and ten pounds frequently. *See* 20 C.F.R.§ 404.1567(b). On remand, the ALJ should further develop the record concerning Plaintiff's PRW, as well.

III.    Conclusion and Recommendation

Based upon the foregoing, the court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. Therefore, it is recommended that the Commissioner's decision be reversed and remanded under sentence four of 42 U.S.C. § 405(g) for additional consideration as set out herein.

IT IS SO RECOMMENDED.

August 10, 2010                                        Shiva V. Hodges
Florence, South Carolina                              United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**